IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRYL EDMONDS** | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.  08-5760** |
| | : | |
| | : | |
| **ROBERT LAWLER,** *et al.* | : | |
| **Respondents.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                                              **April 18, 2016**

Petitioner seeks relief in this Court pursuant to 28 U.S.C. § 2254, arguing that his state-court conviction was imposed in violation of the United States Constitution.  For the following reasons, the Petition will be denied.

**I.       PROCEDURAL HISTORY**

Petitioner is serving a sentence of life imprisonment after being convicted in a non-jury trial in the Delaware County Court of Common Pleas.  The conviction was affirmed on direct appeal, and the Pennsylvania Supreme Court denied review.  Petitioner filed a timely petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") and counsel was appointed.  Counsel filed a letter attesting that there were no meritorious issues, and was permitted to withdraw.  The PCRA court denied relief, and the Pennsylvania Superior Court affirmed.  The Pennsylvania Supreme Court denied relief.

Petitioner then filed his Petition in this Court. Magistrate Judge Wells issued a Report and Recommendation ("R&R") on May 22, 2009, recommending that the claims be denied or dismissed without a hearing.  The R&R concluded that Petitioner's claim that his PCRA counsel was ineffective for failing to raise claims of ineffective trial counsel was not cognizable, and that

the claims of ineffective assistance of trial counsel were procedurally defaulted as they were not raised in the PCRA proceeding.  The R&R concluded that the claims that were not procedurally defaulted were without merit.

At Petitioner's request, the Court then stayed this federal action while Petitioner pursued a second PCRA petition in state court.  That petition eventually was dismissed as untimely; a decision affirmed by the Superior Court.[1]  After proceedings in state court concluded, Petitioner filed objections to the R&R based on his claims of ineffective assistance of counsel.

## II.    LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs petitions such as the one before this Court.  Under the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States."[2]  Where, as here, the petition is referred to a magistrate judge for a report and recommendation, a district court conducts a *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." [3]

## III.    DISCUSSION

Generally, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising

---

[1] Doc. No. 37 (attaching Superior Court opinion).  Petitioner did not seek leave to appeal this determination to the Pennsylvania Supreme Court.

[2] 28 U.S.C. § 2254(a).

[3] 28 U.S.C. § 636(b)(1).

under section 2254."[4]  However, after the R&R was issued, the United States Supreme Court held that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel in post-conviction collateral proceedings.[5]  Specifically, the *Martinez* Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[6]  Petitioner filed a *pro se* PCRA petition  that raised unspecified claims of ineffective assistance of counsel.  Counsel was then appointed, and filed a no-merit letter and was granted leave to withdraw, after which the petition was dismissed without a hearing.  Because Petitioner has not demonstrated that his PCRA counsel was ineffective in filing a no-merit letter, *Martinez* does not afford him relief.  Moreover, even if *Martinez* could be held to apply, and that PCRA counsel was ineffective by characterizing the claims of trial counsel ineffectiveness as without merit, Petitioner has not shown a colorable claim that trial counsel was ineffective.

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in *Strickland v. Washington*.[7] Under *Strickland*, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the petitioner.[8]  Counsel's performance is only deficient when it is "outside the wide

---

[4]  28 U.S.C. § 2254(i).

[5] *See Martinez v. Ryan*, -- U.S. --, 132 S. Ct. 1309, 1315-21 (2012).

[6] *Id.*, 132 S. Ct. at 1320.

[7] 466 U.S. 668 (1984).

[8] *Id.* at 687.

3

range of professionally competent assistance."[9]  Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[10]  For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[11]  Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[12]

Petitioner was convicted of the murder of an elderly woman who lived alone in an apartment in Chester, where police found her remains in the bathroom on September 18, 2000. The victim had been dead for some time as a result of multiple blunt force injuries to the head. The doors to the bathroom and the apartment had been sealed with duct tape, a pillow had been taped in front of the bathroom door, and efforts to clean the bathroom or obscure any evidence had been made.  A palm print identified as Petitioner's was found at the scene but Petitioner denied he had ever been in the victim's apartment. Petitioner had lived several doors away from the victim in the same apartment building; although he had been evicted in April 2000, he continued to squat in the apartment until September 16, 2000, when he moved to Philadelphia. The duct tape was similar in color and width to duct tape found during a search of the apartment in which Petitioner had been squatting.  Petitioner was convicted of the murder and of the

---

[9] *Id.* at 690.

[10] *Lewis v. Horn*, 581 F.3d 92, 106-07 (3d Cir. 2009).

[11] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991)).

[12] *Strickland*, 466 U.S. at 694.

burglary of a nearby apartment, and sentenced to life imprisonment without the possibility of parole for murder with a concurrent term of three to six years for the burglary.

Petitioner argues that trial counsel was ineffective for 1) failing to object to the Commonwealth's reinstitution of a charge of burglary that had been dismissed during the preliminary hearing for lack of evidence; 2) failing to advance claims that Petitioner did not knowing and competently sign uncounseled waivers to give statements and fingerprints during interrogations conducted in 2000 and 2002; 3) failing to adequately investigate Petitioner's mental health history; 4) failing to investigate or argue as exculpatory evidence a shoe print found at the crime scene; 5) failing to argue that the three-week range in which death may have occurred prevented Petitioner from preparing an alibi defense; 6) using "boilerplate" and insufficient arguments; and 7) failing to preserve these issues for appeal.

Upon careful review of the state-court record, the Court concludes that counsel did challenge the burglary charge (even if not on the same grounds urged by Petitioner), moved to suppress the evidence obtained as a result of the interrogations (resulting in a multi-day suppression hearing), and argued the evidence of the shoe print.  Counsel also successfully obtained funds to hire a fingerprint expert to challenge the evidence of the palm print.   These issues all were raised on appeal.  On these claims, the record fails to support an argument that counsel's performance fell below an effective level of representation.

The fact that the medical examiner could not determine with any certainty when the murder occurred, other than a "very rough estimation" of two to three weeks before the body was discovered,[13] made any possibility of alibi evidence irrelevant; Petitioner has not alleged how pointing this out explicitly to the trial judge (sitting without a jury) would have made any

---

[13] Tr. Nov. 19, 2003 at 31.

difference to the outcome of the trial.   The claim of "boilerplate" or insufficient argument by counsel is too vague to raise any inference of ineffectiveness. That leaves Petitioner's claim that counsel did not investigate Petitioner's mental-health history, which he argued included several in-patient hospitalizations for psychiatric treatment at some unspecified time.

The Court finds no evidence in the state-court record that there were any concerns with regard to Petitioner's competency to stand trial.  At the start of trial, Plaintiff signed a written colloquy concerning the waiver of a jury trial, initialing the paragraph stating that there were no "physical emotional or mental problems which affect my ability to understand what I am doing today, the rights which I have and the rights which I am giving up by waiving a jury trial."[14]  In open court, Petitioner also engaged in a colloquy with his attorney, and when asked whether he was that day "suffering from any physical, emotional or mental problems . . ." answered "[n]o, I'm not."[15]  The Certificate of Imposition of Judgment of Sentence dated March 1, 2004, did include a recommendation of mental health treatment, but there is no further explanation available in the record.  In his first PCRA proceeding, appointed counsel filed a no-merit letter that gave no indication that Petitioner had raised the mental-health issue at that time.  Not until the second PCRA proceeding did the issue arise.  On August 21, 2009, appointed counsel filed a no-merit letter stating that in the second petition, Petitioner alleged that "trial counsel was ineffective for failing to fully investigate Defendant's mental state to determine competency to stand trial . . . ."[16]  Appointed counsel determined that the claim was without merit, as Petitioner had not made "any allegations that his trial counsel knew or should have known that he suffered

---

[14] Waiver of Jury Trial dated November 18, 2003.

[15] Tr. Nov. 18, 2003 at 7.

[16] Doc. No. 25-1 at 9.

from brain damage or serious mental illness prior to or at the time of trial" or that Petitioner had been prejudiced by the failure to investigate this claim.[17]

Petitioner still has not alleged that counsel had any basis to investigate his mental-health background; even if there were such a basis, Petitioner has alleged no prejudice. Nothing in the trial record gives any suggestion that Petitioner was unable to understand the proceedings and assist in his defense, and Petitioner has not alleged differently. Nor has Petitioner alleged that any evidence of his mental-health treatment would have had an effect on the trial. The theory of the case was that Petitioner had not committed the murder and the evidence against him was circumstantial. To assert a defense to first-degree murder based on the "extremely limited defense" of diminished capacity[18] would have required Petitioner to admit that he had killed the victim but that he lacked the specific intention to do so, thus reducing it to murder in the third degree.[19] The elaborate measures taken to clean up and delay discovery of the crime scene would have made such a defense extremely difficult to mount, and Petitioner does not suggest that he was prepared to admit to the murder. As this was not a capital case, evidence of mental illness would not have been a factor in mitigation for sentencing purposes.[20] Thus, even if counsel were ineffective, which the Court does not find, Petitioner has not established prejudice.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. There is no basis for concluding that "reasonable jurists could debate whether . . . the petition should have been resolved in a different

---

[17] Doc. No. 25-1 at 12.

[18] *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005) (quoting *Commonwealth v. Cuevas*, 832 A.2d 388, 393 (2003) (internal quotation marks omitted)).

[19] *Id.* (internal citations omitted).

[20] *See Rompilla v. Beard*, 545 U.S. 374 (2005) (holding that counsel's failure to investigate the defendant's mental health and other evidence required a new trial at the penalty phase or a sentence of life imprisonment; it did not affect the validity of the defendant's murder conviction).

manner or that the issues presented were adequate to deserve encouragement to proceed

further."[21]   An order will be entered.

---

[21] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation omitted).